NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 28 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSEPH MIER, individually, and on behalf of all others similarly situated,

Plaintiff-Appellant,

v.

CVS HEALTH, a Rhode Island corporation; CVS PHARMACY, INC, a Rhode Island corporation,

Defendants-Appellees,

VI-JON, LLC.,

Intervenor-Defendant-Appellee.

No.    22-55665

D.C. No.
8:20-cv-01979-DOC-ADS

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted July 20, 2023
Pasadena, California

Before:  NGUYEN and FORREST, Circuit Judges, and BENNETT,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Richard D. Bennett, Senior United States District Judge for the District of Maryland, sitting by designation.

Joseph Mier appeals the district court's denial of class certification as to his claims against CVS Health, CVS Pharmacy, Inc., and VI-JON, LLC (collectively, "CVS") for fraud; negligent misrepresentation; violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.* We have jurisdiction pursuant to 28 U.S.C. § 1292(e) and Rule 23(f) of the Federal Rules of Civil Procedure. Reviewing the district court's class certification decision for abuse of discretion, *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018), we affirm in part and vacate and remand in part.

To meet the predominance requirement for class certification, Fed. R. Civ. P. 23(b)(3), a plaintiff must show that damages are capable of measurement on a class-wide basis and attributable to the proposed theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34–36 (2013). John Krosnick, Ph.D., performed a survey-based conjoint analysis to establish an alleged price premium associated with the "kills 99.99% of germs*" statement on the front label of CVS's Advanced Formula Hand Sanitizer. Mier contends that Dr. Krosnick's analysis provides a *Comcast*-compliant damages model for the claims at issue.

1.      Damages for fraud and negligent misrepresentation are calculated as the difference between what the consumer paid for the product and what the product's market value would have been but for the misrepresentation. *See In re*

*First All. Mortgage Co.*, 471 F.3d 977, 1001 (9th Cir. 2006); *see also Anderson v. Ford Motor Co.*, 74 Cal. App. 5th 946, 961 (2022), *reh'g denied* (Mar. 8, 2022), *review denied* (May 11, 2022). The district court reasonably concluded that Mier's damages model does not adequately account for market supply and thus cannot measure class-wide damages based on market value.

First, record evidence shows that market supply fluctuated during the class period—contrary to Mier's argument that the supply curve of the damages model was identical to the historical supply curve of the real world. Dr. Krosnick's report itself cites deposition testimony that CVS's supply of hand sanitizer "r[an] low" amid the COVID-19 pandemic. And even if real-world supply were fixed throughout the pandemic, the class period extends as far back as 2016, and Dr. Krosnick did not calculate a supply curve for pre-pandemic months. Second, Mier contends that marginal supply costs would effectively remain the same if CVS stopped printing the challenged statement on the product label. Even accepting this argument as true, it does not account for how a change in market demand from removing the statement would affect market supply. Finally, Mier relies on deposition testimony that CVS did not consider label claims in its pricing decisions. Mier's reliance on this testimony is misplaced because, if true, it could reasonably suggest there was no price premium at all. If the value of the product on the open market were the same regardless of the alleged misrepresentation, then

3

there would be no difference between what the consumer paid for the product and what the market price of the product would have been but for the statement.

Because the district court did not abuse its discretion in ruling that Mier failed to establish a class-wide damages model for his fraud and negligent misrepresentation claims, we **AFFIRM** the district court's denial of class certification as to these claims.

Mier also argues that the district court abused its discretion by holding that Dr. Krosnick's expert testimony and report could not be used to calculate a market price since his report did not calculate a supply curve. The district court reasonably concluded that Dr. Krosnick's testimony and report are irrelevant to market price because he failed to analyze where the supply curve intersects with market demand. *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 669 (9th Cir. 2004) (explaining that we have pendent appellate jurisdiction over rulings inextricably intertwined with or necessary to ensure meaningful review of decisions properly before us on interlocutory appeal); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (explaining that expert testimony must be "relevant to the task at hand") (internal quotation marks and citation omitted). Thus, we **AFFIRM** the district court's limited exclusion of Dr. Krosnick's testimony and report for the purpose of showing market price.

2. "[I]n calculating restitution under the UCL and FAL, the focus is on

4

the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015). The district court correctly concluded that restitution is measured by willingness-to-pay rather than market value.

The district court denied class certification as to the UCL and FAL claims, concluding that Mier failed to meet the predominance requirement because "roughly 80% of consumers were still willing to purchase the CVS hand sanitizer without the 99% claim." However, the district court misinterpreted the results of Dr. Krosnick's analysis, which derive from each respondent choosing from five randomized product pairs, as opposed to a separate set of respondents for every product pair. Thus, per Dr. Krosnick's report, 19.30% is the average reduction in *purchases* of CVS hand sanitizers among *all* survey respondents when the 99.99% statement is removed—not a reduction in *consumers* who would purchase CVS hand sanitizers without the statement.

We therefore conclude that the district court's interpretation of Dr. Krosnick's report was clearly erroneous. The district court limited its reasoning for denying class certification of the UCL and FAL claims based on this erroneous interpretation, and we decline to consider in the first instance whether denial of class certification may have been appropriate under a correct

5

interpretation of the survey or for other reasons. We therefore **VACATE** this denial and **REMAND** to the district court to reconsider class certification as to the UCL and FAL claims. Beyond clarifying the factual record as to the reported average reduction in purchases, we express no view on whether Mier otherwise meets the predominance requirement as to the UCL and FAL claims. We leave it to the district court's sound discretion to reevaluate the requirements for class certification in the first instance.

**AFFIRMED in part; VACATED and REMANDED in part.**